**UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: | ) |
| | ) U.S. Dist. Ct. No. 07-1222-WEB |
| BRYAN K. MARSHALL | ) Case No. 05-18216 |
| JULIE M. MARSHALL | ) |
| | ) Chapter 7 |
| Debtors. | ) |
| ______________________________ | ) |
| | ) |
| LINDA S. PARKS, TRUSTEE, | ) |
| | ) |
| Plaintiff/Appellant, | ) |
| | ) |
| vs. | ) Adv. No. 06-5181 |
| | ) |
| FIA CARD SERVICES, N.A., | ) |
| successor in interest to | ) |
| MBNA CORPORATION | ) |
| | ) |
| Defendant/Appellee. | ) |
| | ) |
| ______________________________ | ) |

**MEMORANDUM AND ORDER**

This case comes before the court upon an appeal from a Bankruptcy Court order wherein that court denied a trustee's complaint to recover upon a claimed preferential transfer. (Doc. 1, Ex. 3).

**I. BACKGROUND FACTS**

This appeal arises from a final order and judgment wherein a bankruptcy court designated transfers of a debtor made within the 90 day avoidable period provided under 11 U.S.C. §547(b) to fail to qualify as a "transfer of interest in property." Consequently, the disputed transfers were excluded from the bankruptcy estate. The Appellant contends that the disputed transfers

are preferential, while the Appellee argues the transfer cannot qualify as a preferential transfer.

The facts surrounding the case are as follows. On October 13, 2005, Bryan K. Marshall and Julie M. Marshall ("Debtors") filed a Chapter 7 bankruptcy petition. Linda S. Parks ("Trustee" and "Appellant") was appointed to serve as Trustee of the Debtors' bankruptcy estate. The parties consented, in lieu of a trial, to stipulate to the facts and brief this matter to Bankruptcy court. The parties consented to the entry of a final order by the Court based on these stipulations and briefs in this matter. Based upon the stipulations, this Court largely repeats the "Findings of Fact" concluded by the Bankruptcy Court in its Memorandum and Order. (Doc. 1, Ex. 3, pg. 3-4).

Debtors had two credit card accounts with MBNA, one account ending in 6264 and one account ending in 7781. On July 24, 2005 the balance on the MBNA account ending in 6264 was $17,009.55, and the balance on the MBNA account ending in 7781 was $22,449.15. Debtors also had two Capital One Platinum Mastercard Accounts, with $30,000 available credit on the account ending in 0125 and $25,000 available credit on the account ending in 5090.

On July 27, 2005, in accord with Debtors' directions, Capital One paid MBNA the sum of $17,000 on the MBNA account ending in 6264 and the sum of $21,000 on the MBNA account ending in 7781. Debtors' credit limit on the MBNA account ending in 6264 was increased by the amount of the payment. The amounts due by Debtors to Capital One Platinum MasterCard Accounts were increased by the amounts of the payments to MBNA, with the transfer of $17,000 being charged to the Capital account ending in 0125 and $21,000 being charged to the account ending in 5090. No funds were disbursed to the Debtors. Debtors' total credit card debt was not

increased by the transactions. In the past, Debtors had made sporadic, monthly payments to MBNA, in amounts significantly less than the full account balances. The July 27, 2005 payments were made within the preference period, while the Debtors were insolvent.

On July 23, 2007, the Bankruptcy Court for the District of Kansas issued a Memorandum and Order which denied the Trustee's complaint to recover as a preferential transfer Capital One's payments to the defendant FIA Card Services.[1] On August 1, 2007, the Trustee/Appellant filed an Appeal of the Bankruptcy Court's order, wherein the Trustee moves this Court to deem the transfer a preferential transfer and return the proceeds of the transfer to the bankruptcy estate. (Doc. 1). FIA Card Services now defends the bankruptcy court's order and serves as Defendant-Appellee in this appeal.

**II. STANDARD OF REVIEW**

For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); see Fed. R. Bankr. P. 8013; *Fowler Bros. V. Young (In re Young)*, 91 F. 3d 1367, 1370 (10th Cir. 1996). De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991).

The appropriate standard of appellate review in this matter is a de novo review. The facts in this matter have been stipulated to and are not in dispute; therefore, it is only the conclusions of law that are at issue in this matter and are subject to de novo review. *Travelers*

---

[1] FIA Card Services is the successor in interest to MBNA Corporation.

*Insurance Co. v. American Ag Credit Corp. (In re Blehm Land & Cattle Co.)*, 859 F. 2d 137 (10th Cir. 1988).

## III. APPLICABLE LAW

*A. Statutes and Applicable Cases*

Under Title 11 U.S.C. §547(b),[2] "a transfer is avoidable if it: (1) is of an interest of the debtor in property; (2) is for the benefit of a creditor; (3) is made for or on account of antecedent debt owed by the debtor before the transfer was made; (4) is made while the debtor was insolvent; (5) is made on or within ninety days before the date the bankruptcy petition was filed; and (6) allows a creditor to receive more than the creditor would otherwise be entitled to receive from the bankruptcy estate." *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).

The burden of proving each of these elements rests on the trustee." *Id. (*quoting *Sender v. Johnson ( In re Hedged Investments Assocs., Inc.*), 84 F.3d 1267, 1270 (10th Cir.1996)). In this appeal, the dispute concerns the threshold issue of whether the credit card payments by Capital One constituted a transfer of "an interest of the debtor in property." (Doc.2, Ex. 5(Stipulations)) (Doc. 4 pg. 6-7)(Doc. 5, p.vii).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *In re Kunz 489 F.3d 1072, 1077* (10th Cir. 2007) (quoting *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, (1989). "Statutory construction must begin with the language employed by Congress

[2]All statutory sections will refer to Title 11 unless otherwise specified.

and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Id. (quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194 (1985).

The Bankruptcy Code does not define "an interest of the debtor in property." For guidance in defining this term the Supreme Court direct courts to refer to Section 541(a)(1)'s definition of "property of the estate." *Begier v. U.S.,* 496 U.S. 53,60 (1990). §541(a)(1) defines the property of the estate to consist of "all legal or equitable interests of the debtor in property as of the commencement of the case." Consequently, " 'property of the debtor' subject to [§ 547(b)] is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier,* 496 U.S. at 58. "[T]he fundamental inquiry under §547(b) will be whether the Debtor had a legal or equitable interest in the property [transferred] such that the transfer at issue diminished or depleted the Debtor's estate." *Manchester v. First Bank & Trust (In re Moses),* 256 B.R. 641, 645 (10th Cir. BAP 2000)*(quoting Bailey v. Hazen (In re Ogden),* 243 B.R. 104, 113 (10th Cir. BAP 2000).

In preference litigation, the form of the transaction must satisfy the statutory elements, and the "debtor's intent or motive is not material." Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 547.03 , 547-14-15 (15th ed. rev. 2007).

*B. Earmarking Doctrine Exception*

*1. General Application of the Doctrine*

"Earmarking" is a judicially-created doctrine that originally arose under the Bankruptcy Act in co-debtor cases where the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor. See *In re Moses,* 256

B.R. at 645-46.[3] The earmarking doctrine was eventually extended "to situations where the new creditor is not a guarantor but merely loans funds to the debtor for the purpose of enabling the debtor to pay the old creditor." *In re Moses*, 256 B.R. at 646 (quoting *McCuskey v. Nat'l Bank ( In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 566 (8th Cir.1988)); see *In re Kertz*, 347 B. R. 418 (Bankr. D. Colo. 2006).

"Under the 'earmarking doctrine,' funds provided to a debtor for the purpose of paying a specific indebtedness may not be recoverable as a preference from the creditor to which they are paid, on the premise that the property 'transferred' in such a situation was never property of the debtor and so the transfer did not disadvantage others creditors. One creditor has been substituted for another thus, when the new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be 'earmarked' and the payment is held not to be a voidable preference." Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 547.03[2], at 574-24 (15th ed. rev. 2007).

Various courts have undertaken three lines of examination in determining if a transaction qualifies for the exception. A number of courts utilize the "intent" test, which requires: (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms and

---

[3]*See, e.g., National Bank v. National Herkimer County Bank,* 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912); *Smyth v. Kaufman (In re J.B. Koplik & Co.),* 114 F.2d 40, 42 (2d Cir.1940); *First Nat'l Bank v. Phalen,* 62 F.2d 21 (7th Cir.1932); *see also Adams v. 646 Anderson ( In re Superior Stamp & Coin Co.),* 223 F.3d 1004, 1008 (9th Cir.2000) (discussing history of earmarking doctrine); *McCuskey v. Nat'l Bank ( In re Bohlen Enters., Ltd.),* 859 F.2d 561, 565-66 (8th Cir.1988) (same); *Brown v. First Nat'l Bank,* 748 F.2d 490, 491 (8th Cir.1984) (applying doctrine in co-debtor situation) (citing cases); *Gray v. Travelers Ins. Co. ( In re Neponset River Paper Co.),* 231 B.R. 829, 834 (1st Cir. BAP 1999) (recognizing origins of earmarking doctrine); *Glinka v. Bank of Vt. ( In re Kelton Motors, Inc.),* 153 B.R. 417, 424-26 (Bankr.D.Vt.1993) (same); *Collier,* ¶ 547.03[2] at 547-24-29 (15th ed. rev. 2007).

(3) the transaction viewed as a whole does not result in any diminution of the estate. See *In re Bohlen Enters., Ltd.*, 859 F.2d at 565,566 (8th Cir. 1988). Other courts examine an earmarking defense under the "control test," where courts typically consider "whether the new creditor restricted the use of the funds, whether the debtor had physical control over the funds, and whether the debtor had the ability to direct to whom the funds should be paid." *In re Moses* 256 B.R. at 650. A third line of cases incorporate the self-explanatory "diminution of the estate" test, where the court simply looks at if the bankruptcy estate was diminished by the transfer. See *id.* at 650.

The 10th Circuit has not explicitly adopted any of the tests; nonetheless each analysis ultimately inspects the dominion and control the debtor exercised over the property and if the transaction resulted in a diminution of the debtor's estate. *Id*. at 645. The "control" analysis and the "diminution of the estate" analysis are closely tied. "Control" of the property will generally lead to a property interest, and consequently, in circumstances the debtor transfers such property interest a "diminution of the estate" results.[4]

*2. Application to the case at bar*

The extension of the doctrine beyond just guarantors, where a third party creditor merely loans funds to the debtor for the purpose of enabling the debtor to pay the old creditor, has

[4] See *In re Hartley*, 825 F.2d 1067,1070 (6th Cir. 1987)(wherein court stated: "In the context of transfers by third parties, the diminution of estate doctrine asks whether the debtor controlled property to the extent that he owned it and thus the transfer diminished his estate.");see also *Matter of Smith* , 966 F.2d 1527, 1538-1539 (7th Cir. 1992)(Flaum. J., dissenting)(citing in part *In re Hartley*, 825 F.2d at 1070) ("Concluding that a debtor's estate has not been diminished when a third party pays off a debt owed an old creditor is shorthand for 'the transferred funds were never the debtor's property because the debtor never had the power to allocate them to other creditors.' " ).

endured verbose criticism. See *In re Moses,* 256 BAP at 646-49.[5] Both parties in this case concede to the narrow application of the "earmarking doctrine" espoused in *In re Moses*, wherein the 10th Circuit BAP court concluded that the doctrine should apply only in cases involving co-debtors. *Id.* The parties indicate that since this case involves parties who were not co-debtors that the earmarking doctrine is inapplicable. (Doc. 6 p.10-12).[6]

Nonetheless, the arguments put forth by both parties center upon the debtors "control" of the payments to MBNA and whether such payments "diminished" the debtors' estate. (Doc.3,5,6). These arguments mirror those one would make in an earmarking analysis without explicitly asserting an "earmarking" exception. The Court has neither been presented with nor does it find controlling authority affirmatively support limiting the benefits of the earmarking doctrine solely to co-debtors or guarantors.

The court recognizes that "control" and "diminution of the estate" are also the analysis the Supreme Court directed in determining a §547 property interest. See *Begier,* 496 U.S. at 58-59.[7] This Court determines that in accordance with the jurisdictional precedents it is subject to, it must consider the earmarking doctrine's application to the transfers at bar and that such application includes instances, such as here, where the new creditor is not a co-debtor or

---

[5]See e.g., *Bohlen,* 859 F.2d at 566 (in dictum, the Eighth Circuit questions application, although ultimately adopts the non-guarantor application in its analysis ); *Neponset River,* 231 B.R. at 835 (First Circuit BAP refuses to extend doctrine beyond co-debtor situation).

[6]Appellee's brief (Doc.5) makes no mention of earmarking. This Court feels the absence of its assertion is tantamount to conceding that it does not apply.

[7] In *Begier* the court stated that to determine threshold issue of "transfer of a property interest" courts should look at the diminution of the estate and the ownership of legal title (i.e. control) of the interest. See also *Matter of Smith,* 966 F.2d at 1538(Flaum J.,dissenting )(stating that a conclusion that a debtor meets the earmarking doctrine or has not depleted the estate are "essentially" the same thing.)

guarantor.[8]

Therefore, the court concludes that an earmarking analysis remains a necessary consideration in this case and finds no prejudice in applying the doctrine. The doctrine's adoption under these facts still require analyzing the debtor's "control" of the payment and the payments effect upon "diminishing the debtor's estate." These arguments of control and diminution have already been thoroughly argued in both parties' briefs.[9] Thus, these issues have been appropriately addressed by the parties.

**IV. ARGUMENTS**

The only issue before the court concerns whether the credit card payments made by Capital One to MBNA upon the direction of the debtors constituted a transfer of an "interest of the debtor in property" under §547. (Doc.2, Ex. 5(Stipulations)) (Doc. 4 pg. 6-7)(Doc. 5, p.vii). As discussed earlier, the debtors' interest in property is argued by the parties through their

---

[8] Many circuits extend the earmarking exception beyond the guarantor context. See *Coral Petrol., Inc. v. Banque Paribas-London,* 797 F.2d 1351, 1356 (5th Cir.1986); *Mandross v. Peoples Banking Co. (In re Hartley),* 825 F.2d 1067, 1070 (6th Cir.1987); *In re Smith*, 966 F.2d 1527, 1533 (7th Cir.1992); *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.),* 986 F.2d 228, 231 (8th Cir.1993); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.),* 97 F.3d 22, 28 (2d Cir. 1996); *Adams v. Anderson (In re Superior Stamp & Coin Co.),* 223 F.3d 1004, 1008 (9th Cir.2000); see also 4 Norton Bankr. L. & Prac. 3d § 66:16(2008)(noting the recent trend of adopting the expansive application of the doctrine). Most important to this Court, the 10th Circuit Court of Appeals recognized the broader earmarking doctrine, though initially not by the "earmarking" name in preferential transfer analysis. See *Inter-State National Bank of Kansas v. Luther*, 221 F.2d 382,393 (10th Cir.1955) (citing *Smyth v. Kaufman*, 114 F.2d 40 (2nd Cir. 1940) and *Grubb v. General Contract Purchase Corp*., 94 F.2d 70 (2nd Cir. 1938) *(Grub* is an opinion written by Judge Learned Hand and is regarded as seminal case in which earmarking was applied beyond the guarantor context)). See also *In re Ogden*, 314 F.3d 1190, 1199 (10th Cir. 2002)(the 10th Circuit, in a non-guarantor case, notes that the earmarking doctrine does not apply and cites two non-guarantor earmarking cases in support of the doctrine's failure under the facts in the case. The doctrines inapplicability is never explicitly or implicitly attributed to the new creditor not being a co-debtor.).

[9]The court notes that BAP decisions are not binding upon District Courts. See *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir. 1990) (stating: "[ . . . ] it must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction."). Further, this Court views the *Moses* BAP court's conclusions on earmarking to be dicta, as the court already decided the case on separate grounds before concluding the doctrine only applies to co-debtor cases. *In re Moses*, at 256 BAP at 649.

assertions of the debtors control of the payments and the consequence the payment sustained upon the debtors' bankruptcy estate.

*A. Control of the Payment*

The Appellees argue that the transfers were ostensibly bank to bank transfers wherein the debtors never possessed any control over the $38,000.00 involved in the payments. (Doc.5, p.1-7). Appellees assert they merely authorized Capital One to transfer or replace their debt with MBNA and liken the transaction to the sale of debt which often occurs between lenders within the mortgage industry. (Doc.5 at 3-5). Appellees maintain that the debtor's absence of possession of a check or proceeds establishes the debtors never holding a sufficient property interest in the payments. (Doc. 5).

Appellees cite support for the transfers not imparting a sufficient property interest from the 5th Circuit Court of Appeals decision *Coral Petroleum Inc., v. Baque Parisas-London*. The court stated in the case :

> "If all that occurs in a 'transfer' is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed. This type of transaction is referred to as 'earmarking,' ( . . . )." (Doc. 5. p.1). *Coral Petroleum Inc., v. Baque Parisas-London*, 797 F.2d 1351, 1356 (5th Cir. 1986)

Conversely, the Appellant states in its Reply to Notice of Appeal that the transfers could not be bank to bank transfers or the sale of debt. (Doc.6, p.4-6). First, Appellants note the transfers were made at the direction of the debtors and not upon any unilateral action of Capital One. (Id. at 4). Further, they cite numerous cases wherein a balance transfer was made from one credit card issuer to another and the court found a preferential transfer existing due to the debtor's

control in deciding which creditor is paid. (Id. p.5-6).[10]

*B. Dimunition of the Estate*

Secondly, the Appellees' brief argues that the transfer is not a preference because it did not result in a diminution of the estate. (Doc.5 pg. 2- 7). It asserts that under no circumstances could the available credit have become a part of the bankruptcy estate and the credit exhausted could not be used to satisfy other creditors. (Doc.5 p. 2-7). It argues that there is a significant difference between instances where a debtor has dominion and control over borrowed funds compared to only control of an existing credit within an account. (Doc.5. p.6).

The Appellees rest support for this distinction between credit and property from the case *In re Perry*. See *Loveridge v. The Ark of Little Cottonwood, Inc. (In re Perry)*, 343 B.R. 685 (Bankr. D. Utah 2005) (Doc. 6, p. 6-7). In that case the court found that a balance transfer from a new credit card company resulted only in the transfer of "credit" and not "property. The court distinguished credit from property noting that "[a]t most a debtor's credit constitutes merely

[10] The cases cited are as follows: *In the Matter of Joseph D. Smith*, 966 F.2d 1527 (7th Cir. 1992)(through means of provisional credit bank granted debtor's checking account $125,000 for check that subsequently did not clear; Court deemed provisional credit to be a transfer of "debtor's interest in property"); *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561 (8th Cir. 1988)(debtor was given a loan for purpose of satisfying debt, but the checks written from loan account were used to pay down a separate, undisclosed debt to the old creditor; the case was ultimately decided on violation of the agreement); *Growe v. AT&T Univ. Card Servs. (In re Adams)*, 240 B.R. 807, 811 (Bankr.D. Me. 1999)(debtor sent blank checks from new creditor and court found the debtor ultimately determined whether and how to use the check and thus exhibited control; the court also found the transfer failed to show an agreement existed on how funds were to be allocated); *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490 (Bankr. W.D. Mo. 1998)(transfer from credit card company upon direction of debtor found to escape earmarking doctrine due to control deriving from debtor's ability to choose creditor); *Rafoool v. Citizens Equity Fed. Credit Union (In Re Hurt)*, 202 B.R. 611 (Bankr.C.D. Ill.1996) (debtor's use of balance transfer check issued by the new creditor satisfied control in choosing which creditors to pay); *Reisz v. Napus Fed. Credit Union (In re Anderson)*, 275 B.R. 264 (Bankr. W.D. Ken. 2002). (Preferential transfer and dispositive control found where debtor used his newly acquired credit card to make payment of antecedent credit card debt); *Yoppolo v. Greenwood Trust Co. (In re Spitler*), 213 B.R. 995 (Bankr. N.D. Ohio 1997). (The debtor opened a new credit card account and instructed new creditor to pay the antecedent credit card debt.); *Werner v. Walman Optical company d/b/a X-Cel Contacts, Inc. (In re Werner)*, 365 B.R. 283 (Bankr. M.d. Georg. 2007). (Debtor used credit card to pay subsequent debt within 90 day period and was deemed preferential transfer); *Yoppolo v. MBNA American Bank (In re Dilworth)*, 2007 Bankr. LEXIS 1376 (Bankr.N.D. Ohio, 2007) (Debtor used a balance transfer check to pay antecedent debt and court found a preferential transfer).

potential wealth" and that "[credit] on its own served no immediate benefit to the estate in bankruptcy." *Id. n re Perry,* 343 B.R. at 688. Accordingly, Appellees contend that the transfer of credit cannot and would not result in a diminution of the bankruptcy estates due to the transfer failing to be an asset or property. (Doc. 6).

In contradiction, the Appellant argues, that the transaction resulted in funds that would have been available to the "pool of creditors" being diminished and therefore the estate was diminished. See *In re Moses* at 649. Appellant finds further support in the cases *In re Adams* and *In re Werner*. In *Werner,* where the court was determining if an estate was diminished and cited *Adams,* the court "concluded that the transfer did diminish the estate, not by increasing the debtor's liabilites, but 'negatively impact[ing] equal distribution of assets among [the debtor's] creditors.'" *In re Werner,* 365 B.R. 283,287 (Bkrptcy.M.D.Ga. 2007) (citing *In re Adams* 240 B.R. at 812). *Growe v. AT&T Univ. Card Servs. (In re Adams)*, 240 B.R. 807,812 (Bankr. D.Maine 1999).

This broader view of how to comprise a bankruptcy estate was also discussed *In the Matter of Joseph D. Smith*, wherein that court pondered that "[the estate] could also be interpreted more broadly to include diminishing the pool available to creditors at any time after the start of the 90-day preference period; then the debtor's pre-transfer property (that could be used to pay creditors) would simply be compared to its post-transfer property." *In the Matter of Joseph D. Smith*, 966 F.2d 1527,1536 (7th Cir. 1992).[11] (Doc.6, p.8-13).

**IV. ANALYSIS AND CONCLUSION**

---

[11]The court in the case ultimately found the estate was diminished using the more narrow analysis of "estate," due to the debtors "control" of the transferred property, but noting the arguable benefits of the broader "estate" view.

"A 'transfer' of a part of the debtor-bankrupt's property is of course the first essential element of a preference, and payments to creditors of a bankrupt by third parties or to the bankrupt for the specific purpose on the part of such third party to satisfy the debt of a creditor does not constitute a transfer within the meaning of the preference statute." *Inter-State Nat. Bank of Kansas City v. Luther*, 221 F.2d 382, 393 (10th Cir. 1955) (citing *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2nd Cir. 1934)).

The stipulated facts indicate an agreement between Capital One and the debtor wherein the debtor authorized Capital One to make payments of $21,000.00 to the MBNA account ending in 7781 and $17,000.00 to the MBNA account ending in 6264 to pay antecedent debts owed by the debtor to MBNA.

Through an inspection of the debtors' "control" of the payments, and such payments' effect upon the estate, an appropriate determination of the debtors interest in the transfer and the protections provided by an earmarking exception, regardless of the doctrine/test used may be concluded. If the payments made on the debtors' behalf were sufficiently controlled by the debtor then the debtor would hold an interest in the property and could not qualify for the earmarking exception and such property's transfer would result in a diminution of the bankruptcy estate. On the contrary, if the debtor is found to not possess sufficient control of the property the transfer of such property would not effect the bankruptcy estate.

*A. Control of the payment*

Capital One's payments made to MBNA did not exhibit the requisite control on behalf of the debtor to impart a property interest. It is undisputed that the debtors never possessed a check or proceeds of a loan. Capital One was under no obligation to cooperate with the debtors'

request. The debtor could not compel Capital One to make a payment. Nonetheless, Capital One chose to make a payment directly and specifically to MBNA on the debtors' behalf and essentially substituted itself as the debtors' creditor for the MBNA debt under the terms agreed through the balance transfer agreement.[12] The Court finds this to be a bank to bank transfer resulting in a substitution of the debtors' creditors.

The Appellants contend that the debtors' ability to direct to whom Capital One made payments reached a level of control constituting a property interest. However, an ability to direct where the funds go does not in itself give rise to a property interest. See *In re Superior Stamp & Coin Co., Inc.*, 223 F.3d 1004,1010 (9th Cir. 2000).[13] As long as the funds were advanced for the purpose of paying a specific creditor, the debtor does not exercise "control" for the purposes of earmarking. *Id*. This Court believes this stance parallels the 10th Circuit's position. See *Inter-State National Bank of Kansas v. Luther*, 221 F.2d 382,393 (10th Cir.1955).[14]

The funds here were specifically directed to a specific creditor. Only MBNA, or its

---

[12]Upon the Capital One's payments, after the direction of the debtor, an agreement is viewed to have been commenced and fullfilled, thus satisfying the first two requirements under the *McCusky* 3-part earmarking doctrine.

[13]The court in *Superior* stated: "However, it is irrelevant whether the debtor or the lender initiates discussions concerning a loan or proposes a particular creditor as the recipient of the funds, so long as the funds are advanced on the condition that they be used to pay that specific creditor. Where there is an agreement between a new lender and the debtor that the funds will be used to pay a specified antecedent debt, a debtor has not exercised control over the funds by "designat[ing] the creditor to whom the monies will be paid *independent of* a third party whose funds are being used ... in payment of the debt. (quoting *In re Kemp*, 16 F.3d 313, 316 )."

[14]In *Inter-State National Bank of Kansas v. Luther*, the court stated in reference to "earmarking" protection: "the payment by the third party must be made with the specified intention on his part that it shall be used for the purpose of discharging the particular debt to the particular creditor. In other words, the third party, not the debtor, must choose the creditor and the debt to be paid.(citation omitted); see also *In re Ogden* , 314 F.3d 1190, 1199(10th Cir. 2002)(the court, in a non-guarantor case, wrote that the earmarking doctrine did not apply to the facts in the case because the new creditor had not "designated the purpose" of the transfer.); cf. Margot Wikman-Bennett, *Earmarking in the Eighth Circuit*, 79 Iowa L. Rev. 965, 982 (May 1994) (discussing the *Luther* case's requirement that payment be with the explicit intention of a specific debt to qualify for the earmarking doctrine.)

successor, could retrieve the payment by Capital One. Again, the debtor did not possess proceeds from a loan, a check or any such discretionary funds.

In *Luther*, the 10th Circuit held that "earmarked" payments must be made by the third party with the "specified intention" that the funds be used for discharging a particular debt to a particular creditor. *Luther*, 221 F.2d at 393. Capital One made both payments to MBNA on specific accounts at the direction of the debtors. Capital One was exclusively in control of the payments and the payments were discharged from Capital One's own account, not the debtors. It is unquestioned that it was Capital One's specified intent that these payment were for a particular debt (MBNA accounts ending in 6264 and 7781) and for the particular creditor (MBNA).

Additionally, in the majority of the cases cited by the Appellant, the debtors clearly possessed greater control over the funds than were exhibited here. The Court's finding conclude that the payments were insufficiently controlled by the debtor and the payments imparted no property interest to the debtor. See *Grubb v. General Contract Purchase Corporation*, 94 F.2d 70, 72 (2nd Cir.1938)("Even though the judge had not so found, we should therefore have had no doubt that the proceeds of the bankrupt's note was never part of its assets.")(L. Hand, Judge).

*B. Dimunition of the Estate*

As was stated earlier, "the fundamental inquiry under §547(b) will be whether the Debtor had a legal or equitable interest in the property [transferred] such that the transfer at issue diminished or depleted the Debtor's estate." *In re Moses*, 256 B.R. at 645 (*quoting in re Ogden*, 243 B.R. at 113). At no time was there a transfer of assets which resulted in a diminution of the estate of the Debtor. "It is the ultimate aim of the preference law in the Bankruptcy Code to insure that all creditors receive an equal distribution from the available assets of the debtor." *In*

*re Perma Pacific Properties*, 983 F.2d 964, 968 (10th Cir.1992).

As has been established by the Court in its previous analysis, the payments of Capital One were not sufficiently an interest of the debtor in property. Consequently, the transfer of the payments posed no effect upon the bankruptcy estate.

However, even if there was control over the funds the Debtors' transfer involved a transfer of "credit" and not assets. As such, the transfer would not and could not have involved property of the bankruptcy estate and logically its transfer could not diminish the estate.

"To be preferential a transfer must diminish the funds to which other creditors can legally resort for the payment of their debts." *In re Southmark* 49 F.3d 1111,1117 (5th Cir. 1995). "The most important purpose of section 547(b) is to facilitate equal distribution of the *debtor's assets* among the creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 177-78, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6138. (Emphasis added). "Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated. The reach of §547(b)'s avoidance power is therefore limited to transfers of "property of the debtor."" *Begier*, 496 U.S. at 58.

At no time was there a transfer of assets which resulted in a diminution of the estate of the Debtor. The cash value of the estate was not effected by the transfer. As the bankruptcy court noted, in liklihood all that substantively occurred was the debtors' line of credit was decreased with Capital One, while equally increasing available credit from MBNA (or its successor in interest).[15] (Doc. p. 7-8, fn. 16).

This Court respectfully disagrees with the expansive interpretation of "property of the

[15]The Bankruptcy Court stated that the materials supplied by the parties did not provide the available credit information for the account to which the $21,000 payment was credited.

estate" supported in *In re Anderson, In re Werner,* and discussed in *Matter of Smith*. This Court's position is lent support from the case of, *Loveridge v. The Ark of Little Cottonwood, Inc. (In re Perry)*, 343 B.R. 685 (Bankr. D. Utah 2005). In *Perry* the sole issue of a disputed 547(b) transfer concerned whether the transfer was for "an interest of the debtor in property." There the debtor made a credit card payment of $9,000 through his MBNA credit card to a creditor, Ark of Little Cottonwood. The trustee argued this transfer was a preference transfer.[16] The court distinguished credit from property noting that "[a]t most a debtor's credit constitutes merely potential wealth" and that "[credit] on its own served no immediate benefit to the estate in bankruptcy."

This court respects the judgements of those courts reaching a contrary conclusion, however it cannot stretch the definition of an "interest in property" so far as to include those items which are not assets of the estate nor capable of being designated property. This Court maintains that if such a broad definition of a transfer was the intention of the legislation that Congress would have likely stated as such or may do so in the future.

The court adds that while it is unfortunate that Capital One will likely endure some financial fallout, it undoubtedly had the opportunity to vet its purchase of the debtors' MBNA debt and incidently proceeded at its own risk in the transactions.

Due to the debtor's insufficient control of the payments and the payments bearing no effect upon diminishing the debtor's bankruptcy estate, the judgment of the Bankruptcy Court is AFFIRMED.

It is so ORDERED on this 26th day of February, 2008.

[16] All other elements were stipulated to satisfy 547(b).

S/ Wesley E. Brown
Senior Federal District Judge
The Honorable Wesley E. Brown